A96A2529. TRANSKEY, INC. v. ADKINSON.
(484 SE2d 30)

BLACKBURN, Judge.

June Adkinson sued her former employer, Transkey, in contract for back wages she claims the company owes her.[1] Transkey admits

---

[1] Adkinson makes no claim in promissory estoppel. But see *Pepsi Cola Bottling Co. &c. v. First Nat. Bank &c.*, 248 Ga. 114 (281 SE2d 579) (1981) (finding estoppel where contract too indefinite to be enforced).

these wages have accrued but claims the company has no obligation to pay them because Adkinson agreed the wages would be paid only if Transkey had sufficient revenues, which Transkey claims it does not. The parties filed cross-motions for summary judgment on this issue, and the trial court found Adkinson was entitled as a matter of law to collect the back wages. Transkey appeals and contends that because of the unfulfilled condition — its inability to pay — Adkinson has no contractual right to the wages. As issues of material fact exist regarding the parties' agreements, we partially reverse the trial court's grant of summary judgment and remand for a jury trial.

In reviewing the grant of a motion for summary judgment, this Court construes the evidence and all reasonable inferences from the evidence strongly in favor of the nonmoving party. *Greenforest Baptist Church v. Shropshire*, 221 Ga. App. 465, 466 (471 SE2d 547) (1996). Summary judgment is proper only if undisputed material facts show the movant is entitled to judgment as a matter of law. OCGA § 9-11-56; see *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

At issue is Adkinson's claim for work she performed in 1992 and 1993. The trial court's order does not specify the amount owed. Certain documents indicate Adkinson accrued unpaid wages in 1991, but her complaint seeks compensation for "services performed in 1992, 1993 and 1994." Furthermore, Adkinson claimed $10,800 for work performed in 1994. Transkey's answer admitted owing her that amount, and we do not consider it to be at issue in this appeal. To the extent Transkey may be contesting its duty to pay Adkinson that amount, the trial court properly granted summary judgment to Adkinson.

Adkinson was hired in 1991, first as an independent contractor and later as a full-time employee. The record shows that during 1992 and 1993, Adkinson was an at-will employee with a set monthly salary. See *Clark v. Prentice-Hall, Inc.*, 141 Ga. App. 419, 420 (1) (233 SE2d 496) (1977) (employee hired for indefinite term is terminable at will). Adkinson's salary during this period was $9,000 per month; however, she received only part of her stated salary during these two years.

Transkey's president, Harry Garrett, and a former employee, Bryant Hodgson, testified that in January 1992, Garrett called a meeting of all employees, including Adkinson, to discuss the company's financial ills. Garrett stated he told those gathered that "[f]rom now on, Transkey would accrue unpaid employee wages as back pay to be paid when Transkey generated sufficient revenues." He also claimed to have told the employees that "every employee was responsible for marketing Transkey's services and only if Transkey was successful would they be paid" and to have given employees who

did not want to work under those circumstances the chance to leave. Hodgson also testified that Garrett made payment of salaries contingent upon Transkey's generating "sufficient revenues."

Adkinson denied that Garrett used these words but acknowledged she attended a meeting at which she was told her wages would accrue, unpaid. "[T]he intent was that [the back pay would] be paid sooner. . . . I don't know that a time was set," she stated. Another former employee, Jan Schaffer, characterized Garrett's statement as, "[W]e don't have the money to pay you now, but we know we owe you that money."

Between January and June 1992, Adkinson testified, she believed money would be available to compensate her "[a]t some salary"; however, she added, "I didn't know what I would be paid." In fact, she was paid a portion of her stated salary only during July, August, November, and December 1992. In October 1992, she wrote a memo asking a senior executive, "What dollar amount must Transkey receive in order for me to be compensated [my full salary]?" That executive responded in a letter, "We are committed to the highest extent to which our cash permits to fulfill our agreement with you on salary payment. Your current salary of $9,000 per month applies through these current arrangements. Any payment not made will continue to accrue as salary owed to you."

In January 1993, Adkinson received another letter from Transkey which stated: "Based on work under contract, I believe we will continue to be able to pay you at the current [$7,000 per month] rate against your agreed upon salary [of $9,000 per month] in February and March. Unpaid salary will continue to accrue and will be paid by the company as cash flow permits." During 1993, Adkinson was paid at the $7,000 per month rate. Adkinson testified she continued to work without full pay because she believed she would eventually receive her complete salary. In an affidavit she filed in connection with the motions for summary judgment, Adkinson stated, "Though TRANSKEY, INC. was, at times, unable to pay me due to cash flow problems, I was always promised by TRANSKEY, INC., that I would, eventually, be paid all back pay."

1. Because Adkinson's employment was terminable at will, Transkey had authority to alter the conditions of her employment. See *Clark*, supra. The terms which Garrett alleges he placed on Adkinson's future employment with the company, if true, created a condition precedent to payment of Adkinson's full salary. In *Dale's Shoe Store v. Dale*, 104 Ga. App. 371 (121 SE2d 695) (1961), an employee sued to recover for services she had rendered her employer, a shoe store, over a one-and-one-half year period. The store's officers had agreed to pay her for those services "when the store got on its feet and got to making a profit." (Punctuation omitted.) Id. This

Court found the "profitability" provision of the agreement to be a condition precedent to the store's obligation to pay. Id. Because no evidence showed what the condition meant, the court found it to be so indefinite and uncertain as to void the entire contract and demand a directed verdict for the store. Id. at 372. See also *Bivin Software v. Newman,* 222 Ga. App. 112, 115-116 (2) (473 SE2d 527) (1996); *E. D. Lacey Mills v. Keith,* 183 Ga. App. 357, 362 (7) (359 SE2d 148) (1987).

Here, likewise, Garrett's affidavit and the January 1993 letter from Transkey to Adkinson indicate Adkinson would be paid "when Transkey generated sufficient revenues" or "to the extent [Transkey's] cash flow permit[ted]." See Williston on Contracts (3rd ed.), § 804 (characterizing promises to pay "when able" as creating a condition precedent). As in *Dale,* this language could be construed to create a condition precedent to Transkey's duty to pay Adkinson's "full" salary. As issues of fact exist as to what Transkey may have promised at certain times, we do not reach the issue of whether this condition would be too vague and indefinite to create an enforceable contract.

2. In this case, although a condition precedent to Transkey's obligation may exist, the parties' own testimony is in conflict, and a jury question exists concerning the terms of Adkinson's employment with Transkey. Adkinson claims she was unaware of the contingent nature of her salary, but she inquired of her employer the amount of revenue Transkey must receive for her to be paid her complete salary. She further testified that she expected to be paid "at some salary" but acknowledged she did not know how much she would be paid. At the same time, she claims she was promised she would be paid her full salary "eventually." Transkey's claim that it conditioned her wages on financial success is undermined by its letter to Adkinson acknowledging that unpaid salary would accrue and would be *owed* to her.

Under these circumstances, the existence of the claimed condition precedent is for the jury to determine. See *Toncee, Inc. v. Thomas,* 219 Ga. App. 539, 541 (2) (466 SE2d 27) (1995) (questions as to terms of parties' agreement require jury resolution). A jury weighing the credibility of the testimony might find Adkinson agreed to perform work for Transkey and be paid only if the company were successful. Furthermore, because Adkinson's employment contract was terminable at will, it was subject to modification each month. See *E. D. Lacey Mills,* supra at 361 (6) (in an at-will employment contract, the original terms for compensation are enforceable for the work actually performed under the contract). Evidence shows the parties made various statements concerning the terms of Adkinson's employment during 1992 and 1993. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." (Punctu-

ation omitted.) *Toncee,* supra at 541. Because a jury must weigh this conflicting evidence to determine the parameters of the agreement or agreements between Transkey and Adkinson, the trial court erred by granting summary judgment on her claims to back pay accrued for services rendered during 1992 and 1993. The trial court did not err by denying Transkey's cross-motion for summary judgment on this issue.

We note that the question of the condition precedent does not necessarily involve a simple "yes or no" answer. Our opinion does not foreclose the possibility that the jury may determine Transkey and Adkinson modified the conditions of the employment agreement during 1992 or 1993, as well. Based on the evidence at hand, a reasonable jury could also find that a condition precedent to Transkey's salary obligation existed only during a portion of Adkinson's period of employment, if at all. Such a jury could, as well, find that Transkey waived any condition precedent for all of or part of the time Adkinson worked for the company. See *Toncee,* supra. These issues of fact are for the jury to resolve.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 27, 1997 —
RECONSIDERATIONS DENIED MARCH 5, 1997 AND MARCH 13, 1997.

*Perrie, Buker, Stagg & Jones, Thomas D. Perrie, Robert L. Bunner,* for appellant.

*Freisem, Macon, Swann & Malone, George H. Freisem III, C. Cyrus Malone III,* for appellee.